Louise D. Eggert, Appellee, v. The Inter Ocean Newspaper Company, Appellant.

Gen. No. 17,516.

1. LIBEL AND SLANDER—*when proof of innocence is inadmissible.*
In libel against a newspaper for publishing that a woman was named

as corespondent in a divorce case, it is error to permit plaintiff to testify that she was not in fact guilty of adultery.

2. LIBEL AND SLANDER—*misleading instruction.* Where a newspaper article, the basis of an action for libel, giving the contents of a bill for divorce and narrating certain matrimonial difficulties, states that the wife was divorced from her first husband and that plaintiff was named as corespondent in such case, and makes further statements not based upon the first divorce case, an instruction is misleading which permits recovery if the jury believe that the article contains any statements which, if untrue, are libelous and not fairly based upon the pleadings and certificate of evidence in the wife's first divorce case, but does not require the jury to believe "from the evidence" nor that the statements refer in any manner to the plaintiff, and no instruction defining the meaning of "libelous" is given.

Action for libel. Appeal from the Superior Court of Cook county; the HON. FARLIN Q. BALL, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1911. Reversed and remanded. Opinion filed December 19, 1912.

JAMES J. BARBOUR, for appellant.

DELBERT A. CLITHERO and JAMES H. DUNNE, for appellee.

MR. JUSTICE FITCH delivered the opinion of the court.

This is an appeal from a judgment rendered against appellant in a libel suit. The published newspaper article, which forms the basis of the suit, purports to give the contents of a bill for divorce filed by Dr. Louis Hirsch against Mrs. Esther Hirsch, formerly Mrs. Esther Eisendrath, and the substance of an interview with Julius Harris, the father of Mrs. Hirsch, denying certain "sensational charges" contained in said bill for divorce. The article states that Dr. Hirsch is the son of a wealthy manufacturer of Wilkesbarre, Pennsylvania, and met Miss Harris in New York, where they were married in 1909; that Dr. Hirsch "asks divorce on the ground that his wife has been insane since their marriage; that she was insanely hysterical and continually taunted him with tales of numerous other sweethearts. He says that

after their marriage his wife claimed that one of her 'sweethearts' would give him $10,000 if he would leave her and allow her to get a divorce. Hirsch charges that he was deceived and did not know that his wife had been previously married until he began his own divorce proceedings. He was then told that she had figured in a sensational divorce case, in which she charged Dr. J. L. Eisendrath with having held a pistol to her head, and intimidated her into going to Hammond and marrying him, in August, 1903. No attempt was made to obtain a divorce until a woman appeared in the case. Louise Eggert, matron of the German Hospital, in which Dr. Eisendrath was employed, was named as corespondent, and the divorce was granted July 31, 1905. Hirsch claims that the Harrises had told him that if he would marry their daughter they would suport him in luxury, and that he might give up his practice in the east.'' The article then quotes Julius Harris as saying that the suit is a ''blackmail plot;'' that the charge that Mrs. Hirsch ''is insane or that there was to have been a settlement to him at her wedding is preposterous;'' that ''he knew she had been married before;'' that ''there was no talk of a settlement;'' that ''he is too lazy to work and spends most of his time painting his face;'' that ''it is true that my daughter figured in another unfortunate divorce affair. She married against her will and we were glad of an opportunity to prove infidelity against Eisendrath.'' The declaration charges that the portion of said article referring to Louise Eggert was published of and concerning the plaintiff, and was false and libelous.

Upon the trial the court gave to the jury, at the request of the plaintiff, the following instruction:

''The jury are instructed that if you believe that the article published by the defendant in its newspaper under date of May 6, 1909, contains any statements, which, if untrue, are libelous and are not fairly based upon the pleadings and certificate of evidence in the

case of Eisendrath v. Eisendrath offered in evidence herein, then in such case you will find the issues for the plaintiff.''

We think the giving of this instruction was reversible error. It will be noted that the instruction does not require the jury to believe ''from the evidence,'' nor that the statements contained in said article ''which, if untrue, are libelous,'' refer in any manner to the plaintiff. There was no other instruction given which defined or attempted to define the meaning of the words ''libel'' or ''libelous.'' Jurors are not lawyers, and many jurors entertain the notion that any false statement published in a newspaper, concerning any person, is a libel. It is, therefore, entirely within the bounds of probability that to an ordinary jury the instruction above quoted would mean that if the jury believe that the article of May 6, 1909, contains any false statement concerning any person, not based on the pleadings and evidence in the Eisendrath case, then they must find for the plaintiff. A reference to the article in question shows that but one sentence refers to the plaintiff. All of the remainder of the article refers to others than the plaintiff. The article contains several statements not based upon the pleadings and evidence in the Eisendrath case. But it is far from correct to say that such statements, even if untrue, are so libelous as to support a recovery by the plaintiff in this case. For example, the article states that Harris said that Hirsch is too lazy to work, and spends most of his time painting his face. The article also states that Hirsch claims his wife has been insane since her marriage, and that he was deceived and did not know she had been previously married and divorced. The article also states that Harris said that these charges of Hirsch were preposterous and were the foundation of a blackmail attempt. All these are serious charges not based on the evidence or pleadings in the Eisendrath case, but none of such statements, even if untrue, is libelous, in the sense that

such statements would entitle the plaintiff to recover. Under these circumstances, the instruction was very misleading and should not have been given.

As we have reached the conclusion that the case must be tried again, we refrain from discussing the evidence in detail. It is probable that many of the errors assigned on this record will be avoided upon the second trial. For the guidance of court and counsel, however, it may be well to say here that we think the court should not have permitted the plaintiff to testify that she was not in fact guilty of adultery. There was no charge that she was in fact guilty of that offense. The charge was that she was named as corespondent in the Eisendrath case, and the evidence should have been confined to that issue.

For the reasons indicated, the judgment of the superior court will be reversed and the cause remanded.

*Reversed and remanded.*